IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs March 3, 2009

**JERRY DALE TIGNER, JR. v. STATE OF TENNESSEE**

**Direct Appeal from the Criminal Court for Shelby County**
**No. 02-08463    James M. Lammey, Jr., Judge**

---

**No. W2008-01131-CCA-R3-PC  - Filed March 25, 2009**

---

The petitioner, Jerry Dale Tigner, Jr., appeals the denial of his petition for post-conviction relief, arguing that he received ineffective assistance of trial counsel.  Following our review, we conclude that the petitioner has not met his burden of demonstrating either that counsel was deficient or that any alleged deficiencies in representation prejudiced the outcome of his case.  Accordingly, we affirm the denial of the petition.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and CAMILLE R. MCMULLEN, JJ., joined.

Jerri D. Mauldin, Memphis, Tennessee, for the appellant, Jerry Dale Tigner, Jr.

Robert E. Cooper, Jr., Attorney General and Reporter; David H. Findley, Assistant Attorney General; William L. Gibbons, District Attorney General; and Muriel Malone, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**FACTS**

The petitioner was convicted of second degree murder and sentenced as a Range I, violent offender to seventeen years in the Department of Correction.  His conviction and sentence were affirmed by this court on direct appeal, and our supreme court denied his application for permission to appeal.  See State v. Jerry Dale Tigner, Jr., No. W2004-01935-CCA-R3-CD, 2005 WL 2259252, at *1 (Tenn. Crim. App. Sept. 15, 2005), perm. to appeal denied (Tenn. Jan. 30, 2006).

The petitioner's conviction stemmed from his shooting of an acquaintance who was visiting at his rural Shelby County home in May 2002.  Id.  The proof at trial established that the petitioner discovered that the victim had stolen some of his jewelry, became angry, and began threatening the

victim with a handgun. Id. There were four eyewitnesses to the shooting: the petitioner's brother, David Tigner; Charles Wood; Robert "Robbie" Rogers; and Adam Whitehead. Id. Rogers, testifying in the State's behalf at trial, described the incident as follows:

> At some point after the [petitioner] woke up on May 18th, he discovered a necklace was missing from his room. The [petitioner] announced to the group that if the necklace was not returned by 3:00 p.m., he was going to shoot someone. Rogers suspected the victim had the necklace and confronted him, telling him to return the necklace. The [petitioner] and the remainder of the group came from the [petitioner]'s bedroom and had the victim sit on the couch. Eventually, the victim emptied his pockets, revealing the necklace and other stolen items. Rogers said the [petitioner] was very upset. The [petitioner] had an old revolver and was pointing it at the victim, saying he would shoot the victim's kneecap, his leg, and his nose. The [petitioner] was pointing the gun, mainly at the victim's face and head, and sometimes waving the gun around. The [petitioner] punched the victim in the head repeatedly with the weapon, but it did not fire at that time. The [petitioner] had cocked the hammer on the revolver, and several of the witnesses asked him at various times to uncock it. Rogers stated that the victim had no weapon and did not threaten the [petitioner]. Rogers heard the shot but was not looking at the [petitioner] at the time. He said the [petitioner] did not attempt to render any assistance to the victim but proposed that the witnesses agree that the victim lunged at the [petitioner] with a knife. The [petitioner] was crying and upset at the time. The [petitioner] did call 911 after ten minutes. David Tigner placed a knife in the victim's hand, using gloves to handle the knife. When Rogers was later questioned by officers, he said he attempted to maintain the concocted story but broke down and told the truth.

Id.

On January 2, 2007, the petitioner filed a *pro se* petition for post-conviction relief in which he raised, among other things, a claim of ineffective assistance of trial counsel. Following the appointment of post-conviction counsel, he filed an amended petition alleging that trial counsel was deficient in her representation for failing to fully investigate the case, failing to raise a defense of diminished capacity, failing to request that the jury be charged prior to closing arguments, and failing to have the jury charged regarding his post-traumatic stress disorder. The petitioner contended that these various deficiencies prejudiced the outcome of his case, resulting in the denial of the effective assistance of trial counsel.

At the March 18, 2008, evidentiary hearing, the petitioner complained that his trial counsel failed to interview the State's witness, Robert Rogers, until the first day of trial. He said he also believed that she should have called more character witnesses to testify during the guilt phase of his trial about his mental state at the time of the shooting. He thought it would have been particularly helpful had she called Dr. Barbara Kirsch, the psychologist who testified at the sentencing phase, whose testimony would have enabled the jury to understand that he could not have formed the requisite mental intent for the crime. The petitioner explained that his girlfriend had been shot and killed during a robbery a few months prior to the shooting and that the experience had left him with

post-traumatic stress disorder, for which he had been prescribed numerous medications, including Xanax, Valium, Soma, Lortab, Paxil, and Zyprexa. According to the petitioner, he was under the influence of those medications, as well as some illegal drugs, at the time he shot the victim.

The petitioner testified that he thought trial counsel should have called his mother to testify at the guilt stage of his trial because she could have told the jury about his mental issues and the medications he was taking. In addition, he believed that his case would have been stronger had trial counsel retained an independent firearms expert. He said the State's firearms expert testified that the gun had a light trigger, but he thought this point "would [have] come out . . . more clear" if he had his own firearms expert. Although he and trial counsel had conversations about trial strategy, he could not recall if they ever specifically discussed retaining their own firearms expert.

On cross-examination, the petitioner conceded that he might have told trial counsel that Rogers was out of town during the months preceding the trial and that he did not know how to reach him. He said he thought he told counsel that he was having flashbacks of the earlier robbery at the time he shot the victim, but he could not recall any specifics of the conversation. Finally, he acknowledged that he told the police that the shooting was an accident, and he agreed that his defense had been predicated on that theory.

Trial counsel testified that she was appointed to represent the petitioner after his case was moved from general sessions to criminal court. She said she had numerous conversations with him about the case, both in her office and at the courthouse, and she shared with him the open file discovery she received from the State, which included his pretrial statements to police. The petitioner maintained in his statements to police and in conversations to her that the shooting was an accident, and her defense strategy therefore consisted of trying to show that it was either a reckless or negligent shooting or a voluntary manslaughter. The petitioner told her about the earlier home invasion/robbery and, on the eve of trial, informed her that the necklace the victim had stolen belonged not to his current girlfriend, but to a girl who had spent the night with him before the shooting. She said the petitioner explained that the necklace held sentimental value, which was why he had become so upset upon learning that the victim had stolen it.

Trial counsel testified that the petitioner never said anything to her about experiencing flashbacks from the home invasion and that she saw no basis from her investigation for a diminished capacity defense. She said that the petitioner's family "orchestrated" the involvement of Dr. Kirsch, the psychologist from Dallas, without her knowledge. Her records indicated that she received a phone message from Dr. Kirsch on January 22, 2004, followed by a faxed report on January 29, which was just before the start of the trial. On cross-examination, she testified that she knew nothing about Dr. Kirsch and believed that her report was based on only one phone conversation with the petitioner. These circumstances, combined with the fact that she did not receive the faxed report until the last minute and the petitioner had never indicated to her that he was experiencing flashbacks, influenced her decision not to call Dr. Kirsch as a witness at trial. She did, however, call her as a witness at the sentencing hearing two months later, with the thought that she would "put her on and see what happen[ed]."

Trial counsel testified that she and the petitioner had several discussions about the fact that Rogers was out of the jurisdiction in the months preceding the trial. She stated that the petitioner had no knowledge of Rogers' whereabouts and no contact information for him. Immediately before trial, however, the State served an interstate subpoena on Rogers in Atlanta, and she interviewed him on the Monday morning before trial began and shared those interview notes with the petitioner. According to counsel, Rogers' trial testimony was essentially consistent with the pretrial statement he had given to police, which she had reviewed along with the other discovery materials. Trial counsel testified that she did not request a separate firearms expert because she believed that the testimony provided by the Tennessee Bureau of Investigation expert called by the State, to the effect that the gun had a "light" trigger that did not take much pressure to pull, "sp[oke] volumes" in support of the petitioner's contention that the shooting was accidental. Finally, she testified that she could not recall whether the trial judge instructed the jury before or after closing arguments, but she did not think there was any "hard and fast rule" regarding when the jury should be charged.

The post-conviction court denied the petition at the conclusion of the hearing, issuing detailed oral findings of fact and conclusions of law, followed by a lengthy written order entered on May 15, 2008. Thereafter, the petitioner filed a timely notice of appeal to this court, challenging the post-conviction court's finding that he received effective assistance of trial counsel.

## ANALYSIS

The post-conviction petitioner bears the burden of proving his allegations by clear and convincing evidence. See Tenn. Code Ann. § 40-30-110(f) (2006). When an evidentiary hearing is held in the post-conviction setting, the findings of fact made by the court are conclusive on appeal unless the evidence preponderates against them. See Tidwell v. State, 922 S.W.2d 497, 500 (Tenn. 1996). Where appellate review involves purely factual issues, the appellate court should not reweigh or reevaluate the evidence. See Henley v. State, 960 S.W.2d 572, 578 (Tenn. 1997). However, review of a trial court's application of the law to the facts of the case is *de novo*, with no presumption of correctness. See Ruff v. State, 978 S.W.2d 95, 96 (Tenn. 1998). The issue of ineffective assistance of counsel, which presents mixed questions of fact and law, is reviewed *de novo*, with a presumption of correctness given only to the post-conviction court's findings of fact. See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001); Burns v. State, 6 S.W.3d 453, 461 (Tenn. 1999).

To establish a claim of ineffective assistance of counsel, the petitioner has the burden to show both that trial counsel's performance was deficient and that counsel's deficient performance prejudiced the outcome of the proceeding. Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); see State v. Taylor, 968 S.W.2d 900, 905 (Tenn. Crim. App. 1997) (noting that same standard for determining ineffective assistance of counsel that is applied in federal cases also applies in Tennessee). The Strickland standard is a two-prong test:

First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the

defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

466 U.S. at 687, 104 S. Ct. at 2064.

The deficient performance prong of the test is satisfied by showing that "counsel's acts or omissions were so serious as to fall below an objective standard of reasonableness under prevailing professional norms." Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996) (citing Strickland, 466 U.S. at 688, 104 S. Ct. at 2065; Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975)). The prejudice prong of the test is satisfied by showing a reasonable probability, *i.e.*, a "probability sufficient to undermine confidence in the outcome," that "but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694, 104 S. Ct. at 2068.

On appeal, the petitioner contends that trial counsel provided ineffective assistance by failing to meet with the key witness, Rogers, until just before the trial; failing to call Dr. Kirsch and the petitioner's mother, Mrs. Woods, to testify at trial with respect to the petitioner's post-traumatic stress disorder and the medications he was taking at the time of the offense; failing to request a jury instruction on diminished capacity; and failing to request that the jury be charged prior to closing arguments.

In denying relief, the post-conviction court found that the petitioner had not met his burden of demonstrating either a deficiency in representation or resulting prejudice. With respect to the petitioner's main allegation that trial counsel should have presented evidence in support of a diminished capacity defense, the post-conviction court's ruling states in pertinent part:

> Second, Petitioner claims that trial counsel failed by not raising a diminished capacity defense, based on post-traumatic stress syndrome caused by a previous home invasion, and by not calling Dr. Barbara Kirsch and Libby Woods in support of this defense. Petitioner claims that this defense would have informed the jury that he could not have formed the intent for the charged offense. Petitioner, however, stated that he maintained from the beginning that the shooting was an accident. [Trial counsel] testified that she . . . made a strategic decision not to call Dr. Kirsch at trial for several reasons, including lack of confidence in calling Dr. Kirsch as a witness and [trial counsel's] doubt that Dr. Kirsch's testimony would support a diminished capacity defense. Furthermore, [trial counsel] testified that the defense theory was that the act was not intentional. Finally, [trial counsel] testified that Mrs. Woods was not called to testify at trial because she was neither present at the scene of the shooting nor at the scene of the previous home invasion. [Trial counsel] was not ineffective for failing to raise this defense.

The record fully supports the findings and conclusions of the post-conviction court. Trial counsel's testimony established that she met frequently and regularly with the petitioner. During those meetings, she went over the discovery she had received from the State, which included the petitioner's statements to police as well as the statements of the eyewitnesses. She also discussed defense strategy and the fact that Rogers was out of the jurisdiction. Trial counsel testified that she

interviewed Rogers on the Monday morning before trial began and that she shared her notes from that interview with the petitioner. She also said that Rogers' trial testimony was essentially the same as the pretrial statement he had given to police. The petitioner has not shown that trial counsel was deficient for failing to interview Rogers earlier, or how that alleged deficiency in any way prejudiced his case.

Trial counsel further testified that the petitioner maintained to police and to her that the shooting was accidental. The petitioner never said anything about experiencing flashbacks and she saw nothing in her investigation that would support a diminished capacity defense. Moreover, she knew nothing about Dr. Kirsch and did not receive her faxed report until the Friday before trial. She explained her decision not to call Dr. Kirsch as a trial witness:

> It was a strategic decision in that three days before trial I'm getting this report from a doctor that I don't know anything about that the family has hired independently that has spoken to my client once over the telephone and she is making these broad brush, oh, he's got this mental disease or defect. Yes, I made a tactical decision given what [the petitioner] had told me, given what Mr. David Tigner had told me, given what Mr. Adam Whitehead had told me and given what Mr. Charles Wood had told me, in my preparation that, no, it would not support that. That his actions were not that he was in a drug induced flashback at the time that he's waving this gun around and that was supported by my conversations with [the petitioner].

The reviewing court must indulge a strong presumption that the conduct of counsel falls within the range of reasonable professional assistance, see Strickland, 466 U.S. at 690, 104 S. Ct. at 2066, and may not second-guess the tactical and strategic choices made by trial counsel unless those choices were uninformed because of inadequate preparation. See Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982). There is nothing in the record that would suggest that trial counsel was unprepared for the case, or that her decision not to present a diminished capacity defense was unreasonable under the circumstances. The petitioner is not, therefore, entitled to relief on the basis of this claim.

The petitioner also contends on appeal that trial counsel was ineffective because "the jury charge was not charged before closing arguments." However, he makes no argument and cites no proof with respect to exactly how trial counsel was deficient in this respect, or how the alleged deficiency prejudiced his case. Accordingly, this claim must also fail.

## CONCLUSION

We conclude that the petitioner has not met his burden of showing that he received ineffective assistance of counsel. Accordingly, we affirm the denial of his petition for post-conviction relief.

_____
ALAN E. GLENN, JUDGE